UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
KEVIN K. SCOTT :
: CASE NO. 1:10-CV-00061
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 18]
MICHAEL ASTRUE, COMMISSIONER :
OF SOCIAL SECURITY :
:
Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Commissioner of Social Security objects to the Magistrate Judge's Report and Recommendation, which recommends reversing and remanding the Administrative Law Judge's ("ALJ") decision. In that decision, the ALJ denied Plaintiff Kevin Scott social security disability benefits. The Defendant moves this Court to reject the Magistrate's Report and Recommendation, affirm the ALJ's decision, and find that the Plaintiff does not deserve disability benefits. For the reasons stated below, this Court **ADOPTS** the Recommendation of the Magistrate Judge, and it **REVERSES AND REMANDS** the ALJ's decision.

**I. Background**

Plaintiff Scott brings this action seeking review of the ALJ's decision denying him disability benefits, saying that (1) the ALJ's finding that he can perform a limited range of jobs is not supported by the evidence; (2) the jobs identified by the vocational expert were not responsive to the

Case No. 1:10-CV-00061
Gwin, J.

ALJ's hypothetical questions and are thus contrary to law; and (3) that the ALJ erred in finding that he could perform a job with any production quota. [Doc. 13; Doc. 17.]

At the time of the filing of his application, the Plaintiff was twenty-one years old. [Doc. 10-7 at 2.] The Plaintiff suffers from mental handicaps and is functionally illiterate. [Doc. 10-3 at 9-10.] The Plaintiff graduated from John F. Kennedy High School and was enrolled in special education classes from First Grade onwards. [*Id.* at 9.] His full scale IQ was tested at 69 in 1996 and at 71 in 2000. [Doc. 10-9 at 6.] Plaintiff Scott underwent a psychological examination by Dr. Joseph Konieczny in 2000; Dr. Konieczny concluded that the Plaintiff "suffers from Reading Disorder, Disorder of Written Expression, and Borderline Intellectual Functioning." [*Id.* at 6.] In April 2004, Plaintiff Scott was again evaluated – this time by Dr. David House – who reached similar findings, concluding that the Plaintiff's concentration and attention were limited, his pace was slow, and that he had a borderline deficient memory for digits. [Doc. 10-9 at 8-14.] These findings were largely echoed by Dr. Catherine Flynn, who conducted the residual functional capacity assessment on October 22, 2007. [Doc. 10-12 at 21.] Dr. Flynn concluded that the Plaintiff has the capacity to do simple, routine work, with infrequent changes, but that he did not have marked limitations in understanding, memory, or persistence. [*Id.* at 14-15.]

In addition to his mental handicaps, the Plaintiff also suffers from a number of documented physical conditions. Plaintiff Scott states that he suffers from headaches and chest pain on a daily basis and has visited the hospital related to his chest pain on several occasions. [Doc. 10-3 at 7-9.] He also has asthma, which he uses a nebulizer to treat. [*Id.* at 6.] Finally, he takes medication for a thyroid condition. [*Id.* at 8.] The medication makes him drowsy and it also causes him to become dizzy when he stands. [*Id.* at 14.] Plaintiff Scott lives with his mother and is capable of helping with

Case No. 1:10-CV-00061
Gwin, J.

some household chores, but feels ill when he is active for too long at a time. [*Id.* at 25.]

During high school, Plaintiff Scott was employed at T&T Fashion part-time. [Doc. 10-3 at 20-21.] He helped sell clothing, but he did not operate the cash register or collect payments. [*Id.*] During 2005, he was employed on a full-time basis at Ganley Ford as an auto detailer; in 2007, he was transferred to the Ganley Oldsmobile division. [*Id.* at 19.] The Plaintiff was responsible for vacuuming the interior of cars and washing the exteriors. [*Id.* at 16.] Due to his mental handicaps, the Plaintiff worked much more slowly than the other employees – only completing approximately one or two cars per day, while his other co-workers easily completed five or six. [*Id.* at 22.] The Plaintiff received special accommodations at this job to account for his slow pace and difficulty reading and writing. [*Id.*] One of Plaintiff Scott's friends provided him with transportation to work at both locations. [*Id.* at 13.] The Plaintiff's employment was terminated at Ganley in 2007 because the dealership did not have any work for him. [*Id.* at 15.] The Plaintiff briefly worked at Remedy Staffing in 2007, but he was forced to leave that job because it was too physically demanding. [*Id.* at 17.]

On February 18, 2011, Plaintiff Kevin Scott applied for Disability Insurance Benefits and Supplemental Security Income, alleging that he became disabled on September 17, 2006. [Doc. 10-7 at 2.] The Plaintiff's request for benefits was denied initially and it was also denied upon reconsideration. [Doc. 10-5 at 2-4, 12-25.] On February 26, 2009, ALJ Mark Carissimi held a hearing during which the Plaintiff and Ted Macy, a vocational expert, testified. [Doc. 10-3 at 3.] On April 9, 2009, the ALJ reached an unfavorable decision, finding that based on "Mr. Scott's age, education, work experience, and residual foundational capacity" that "Mr. Scott has been capable of making a successful adjustment to other work that exists in significant numbers in the national

Case No. 1:10-CV-00061
Gwin, J.

economy . . . [and] [a] finding of 'not disabled' is therefore appropriate . . ." [Doc. 10-2 at 20.] This decision was rendered final on December 14, 2009, when the Appeals Council denied the Plaintiff's request for review. [Doc. 10-2 at 2.]

The Plaintiff filed the current action on January 13, 2010. [Doc. 1.] The Court exercises proper jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). In contesting the ALJ's opinion, the Plaintiff argues that (1) the ALJ's finding that he can perform a limited range of jobs is not supported by the evidence; (2) the jobs identified by the vocational expert were not responsive to the ALJ's hypothetical questions and are thus contrary to law; and (3) the ALJ erred in finding that he could perform a job with any production quota. [Doc. 13; Doc. 17.]

On January 25, 2011, Magistrate Judge Vernelis Armstrong issued a Report and Recommendation. Judge Armstrong recommends this Court reverse and remand the ALJ's decision denying Plaintiff Scott benefits. Judge Armstrong found that the ALJ erred by not explaining whether he considered the ability of the Plaintiff to do physical and mental work on a sustained basis, specifically testimony suggesting the Plaintiff could only work at a significantly reduced pace, when determining the Plaintiff's Residual Functional Capacity during Step Four of the required five-step sequential evaluation. [Doc. 17.] Judge Armstrong rejected the Plaintiff's other arguments, finding that the occupations suggested by the vocational expert were appropriate and that none of the jobs presented by the vocational expert, which were relied upon by the ALJ, required a production quota. [Id.]

On February 8, 2011, the Defendant filed an objection to the Report and Recommendation. [Doc. 18.] In objection, the Defendant says that the Magistrate erred in finding that the ALJ did not

-4-

Case No. 1:10-CV-00061
Gwin, J.

assess the Plaintiff's ability to perform work on a sustained basis because (1) there was no evidence supporting such limitation; (2) it was an error for the Magistrate to consider any evidence of a reduced capacity because the ALJ determined the evidence was not credible; and (3) the ALJ considered such limitations in his finding that the Plaintiff "retained the residual functional capacity for a range of medium work." [Doc. 18 at 2-5.]

## II. Legal Standard

*II.A     Standard for Establishing Disability*

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).

To determine whether a claimant is disabled, Agency regulations provide a five-step sequential evaluation. If a claimant can be found disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). During Step One, the ALJ determines whether the claimant is engaged in a "substantial gainful activity" at the time he or she seeks disability benefits. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). In Step Two, the Plaintiff must show that he or she "suffers from a severe impairment in order to warrant a finding of disability." *Id.* (internal quotations omitted). During Step Three of the analysis, the ALJ determines whether the claimant has an impairment that

Case No. 1:10-CV-00061
Gwin, J.

satisfies one of the criteria of an impairment listed in Appendix 1 and that also meets the durational requirement. *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is deemed disabled if she or he has an impairment that meets both the listing and the duration requirement. For the Fourth Step, the ALJ must determine if the claimant's residual functional capacity allows him to do past relevant work. *Colvin*, 475 F.3d at 740. Finally, in the Fifth Step, the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. *Id.* "For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled." *Id.*

*II.B. Standard of Review*

The Federal Magistrates Act requires a district court to conduct *de novo* review of the claimant's objections to a report and recommendation. 28 U.S.C. § 636(b)(1). A final decision of the Social Security Commissioner made by an ALJ is, however, not reviewed *de novo*. Rather, a district court is limited to examining the entire administrative record to determine whether the ALJ's decision is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence. *See id.* In deciding whether substantial evidence supports the ALJ's decision, a court should not try to resolve conflicts in evidence or decide questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007). Nor should a district court focus, or base its decision, on a single

Case No. 1:10-CV-00061
Gwin, J.

piece of evidence. Instead, a court must consider the record taken as a whole. *See Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980). The district court may, however, look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have made a different decision than the ALJ made. *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). This Court may not review "the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Nevertheless, it is a "well-established rule that an agency's action may not be upheld on grounds other than those relied on by the agency." *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 420 (1992). A reviewing court is powerless to affirm an agency decision where the grounds communicated by the agency are inadequate or improper, or fail to articulate the grounds for the decision. *Burlington Truck Lines v. United States*, 371 U.S. 156, 169 (1962) (describing this tenet as a "simple but fundamental rule of administrative law"); *see also Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) (applying this rule in the Social Security context). Further, "even if supported by substantial evidence, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotation omitted).

### III. Analysis

The Plaintiff challenges the conclusions made by the ALJ during the Fourth and Fifth Steps

Case No. 1:10-CV-00061
Gwin, J.

of the sequential analysis. [Doc. 12.] Specifically, Plaintiff Scott says that the ALJ failed to adequately consider his difficulty working at a sustained pace when determining his residual functional capacity. [*Id.*] The Plaintiff says that the testimony of the vocational expert, as well as the other evidence submitted, supports a finding that he is unable to work in jobs that do not allow him to take frequent breaks or be off-task for a significant amount of time. [*Id.* at 4.]

The residual functional capacity is the physical ability to perform work activity on a regular and continuing basis in an ordinary work setting. 20 C.F.R. §§ 404.1545(b). During the Social Security hearing, Ted Macy, a vocational expert, testified about the Plaintiff's ability to maintain employment and the availability of certain types of jobs. [Doc. 10-3.] The ALJ requested that Macy consider a claimant who was in his twenties, has a high school education, no past relevant work experience, and who is limited to (1) lifting and carrying up to fifty pounds occasionally, (2) lifting and carrying twenty-five pounds frequently, (3) standing and walking for six hours of an eight hour day, (4) sitting for six hours in an eight hour day, (5) pushing or pulling up to fifty pounds occasionally and twenty-five frequently, (6) performing repetitive tasks with no production quotes, (7) receiving instructions orally, and (8) superficial interaction with the public. [*Id.* at 32.] In response, Macy stated that this hypothetical worker could perform the jobs of laundry laborer, hand packager, and bench assembler. [*Id.*] The ALJ then modified this question, repeating the same characteristics, but adding the limitation that the claimant, due to fatigue and difficulties maintaining attention and pace, would be off task twenty percent of the time. [*Id.* at 33-34.] Macy responded that no jobs would be available at a competitive level which this hypothetical claimant could perform without special accommodations. [*Id.* at 34.]

However, despite this line of questioning, the ALJ gives no indication that he took this

Case No. 1:10-CV-00061
Gwin, J.

hypothetical question – or the evidence it was based upon – into account when determining the Plaintiff's residual functional capacity during the Step Four of the analysis. In determining the residual functional capacity, the ALJ concluded: "[Plaintiff Scott] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). However, he is limited to simple, repetitive work without high production quotas. Instructions must be given orally, or by demonstration. He is limited to superficial interaction with the public and with co-workers without negotiation or confrontation. Finally, he must not be exposed to temperatures or concentrated amounts of smoke or fumes." [Doc. 10-2 at 14-15.][1/] During this conclusion and in the accompanying explanation, the ALJ mentioned that Plaintiff Scott was unable to maintain a normal working pace at Ganley Ford/Oldsmobile; however, the ALJ does not otherwise display that he considered the degree to which the Plaintiff's mental handicaps would interfere with the ability to perform work on a regular and continuing basis in an ordinary work setting. [*Id.* at 12-19.] This analysis is erroneous for several reasons and warrants a reversal and remand for consideration of that evidence.

As a preliminary matter, the Court will address the Defendant's objection that the Recommendation of Judge Armstrong is erroneous because the hypothetical question, reducing the ability to work by twenty percent, was not supported by any evidence in the record. [Doc. 18 at 2.] The Defendant's argument is correct on the narrow issue of whether the exact twenty percent calculation is supported by the evidence (and thus whether that exact number has evidentiary value), but misses the more important and larger point. Although there is not any evidence on the record

---

[1/] Medium work is defined as: "(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567.

Case No. 1:10-CV-00061
Gwin, J.

supporting a finding that the Plaintiff's ability to remain on task would be reduced by exactly twenty percent, there is strong evidence on the record that the Plaintiff likely would be off-task on a regular basis and could not maintain a normal working pace. For example, at his most recent sustained employment at Ganley Oldsmobile, the Plaintiff required significant accommodations and only could complete one or two cars in a day, whereas his co-workers could easily complete five or six. [Doc. 10-3 at 22.] Indeed, credible evidence on the record suggests that the Plaintiff's impairments could cause him to be off task by as much as eighty or eighty-five percent, rather than the twenty percent used in the hypothetical. Accordingly, the Court rejects these objections as lacking merit.

The Court will proceed to a discussion of the reasons why it finds that the decision of the ALJ must be reversed and remanded. First, Social Security Ruling 96-8p defines the residual functional capacity as " . . . the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment *must* include a discussion or the individual's abilities on that basis." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 (July 2, 1996) (emphasis added). A discussion of Plaintiff Scott's ability to remain on task and to work at a competitive speed was required under the plain language of SSR 96-8p, which states that the "RFC assessment *must* include a discussion or the individual's abilities [in an ordinary work setting on a regular and continuing basis]." SSR 96-8p, 1996 WL 374184 (July 2, 1996) (emphasis added). The Court. therefore, concurs with Magistrate Judge Armstrong that the ALJ was required to make a finding on the record related to the ability to the Plaintiff to perform in "an ordinary work setting" and that the ALJ failed to do so. *See Payne v. Commissioner of Social Sec.*, 2010 WL 4810212, at *6-7 (6th Cir. 2010); *Delgado v. Commissioner of Social Sec.*, 30 F. App'x 542, 547-48 (6 th Cir.

Case No. 1:10-CV-00061
Gwin, J.

2002).

Second, in determining Plaintiff Scott's residual functional capacity, the ALJ was required to "consider the combined effect of all of the claimant's impairments." *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992); *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007). Here, the ALJ gives no indication that the very serious pacing and concentration limitations caused by the Plaintiff's mental deficiencies were ever seriously factored into the Plaintiff's residual functional capacity. Plainly, such a serious impediment needs to be accurately taken into account if the functional capacity is to have any meaning. *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009) ("In making [the residual functional capacity determination], the ALJ must consider all relevant evidence in the case record . . . [including] the claimant's own description of his limitations.); *Derosett v. Astrue*, 2009 WL 4169489 at *3 (E.D. Ky. Nov. 20, 2009) ("In determining the RFC, the ALJ must consider all of the claimants impairments, including those which are not severe"); *see also Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich., Sept. 30, 2010) (upholding ALJ decision where ALJ explained how mental limitations would not prohibit plaintiff from performing work tasks). Because the ALJ gives no indication that this serious mental limitation was taken into account, the Court finds that the ALJ's decision regarding the residual functional capacity is not currently supported by substantial evidence.

Third, the Court also finds that the ALJ's analysis in Step Five of the analysis – where the ALJ determines if a sufficient number of jobs are available – is flawed because the ALJ was basing this determination on an inaccurate residual functional capacity calculation. The ALJ found that the Plaintiff could complete the jobs of laundry laborer, hand packager, and bench assembler. [Doc. 10-

Case: 1:10-cv-00061-JG Doc #: 19 Filed: 02/22/11 12 of 12. PageID #: 418

Case No. 1:10-CV-00061
Gwin, J.

2 at 20.] However, the vocational expert testified that even a twenty percent reduction in concentration would leave the Plaintiff competitive for none of these jobs. [Doc. 10-3 at 34-35.] As the Plaintiff may easily suffer from any even greater disability than this hypothetical suggests, the ALJ's Step Five finding that a number of careers suited the Plaintiff's skills – without any accommodations – must be reconsidered.

Since the ALJ failed to make any factual findings regarding the effect of the Plaintiff's mental impairments on his ability to work on a sustained basis, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation. The Court **REVERSES and REMANDS** the decision of the ALJ for further proceedings, including a determination of the extent to which the Plaintiff's mental impairments affects his ability to work on a sustained basis in a normal work environment.

IT IS SO ORDERED.


Dated: February 22, 2011           s/     *James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE

-12-

Case: 1:10-cv-00061-JG Doc #: 19 Filed: 02/22/11 12 of 12. PageID #: 418

Case No. 1:10-CV-00061
Gwin, J.

2 at 20.] However, the vocational expert testified that even a twenty percent reduction in concentration would leave the Plaintiff competitive for none of these jobs. [Doc. 10-3 at 34-35.] As the Plaintiff may easily suffer from any even greater disability than this hypothetical suggests, the ALJ's Step Five finding that a number of careers suited the Plaintiff's skills – without any accommodations – must be reconsidered.

Since the ALJ failed to make any factual findings regarding the effect of the Plaintiff's mental impairments on his ability to work on a sustained basis, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation. The Court **REVERSES and REMANDS** the decision of the ALJ for further proceedings, including a determination of the extent to which the Plaintiff's mental impairments affects his ability to work on a sustained basis in a normal work environment.

IT IS SO ORDERED.


Dated: February 22, 2011                    s/     *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

Case: 1:10-cv-00061-JG Doc #: 19 Filed: 02/22/11 12 of 12. PageID #: 418

Case No. 1:10-CV-00061
Gwin, J.

2 at 20.] However, the vocational expert testified that even a twenty percent reduction in concentration would leave the Plaintiff competitive for none of these jobs. [Doc. 10-3 at 34-35.] As the Plaintiff may easily suffer from any even greater disability than this hypothetical suggests, the ALJ's Step Five finding that a number of careers suited the Plaintiff's skills – without any accommodations – must be reconsidered.

Since the ALJ failed to make any factual findings regarding the effect of the Plaintiff's mental impairments on his ability to work on a sustained basis, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation. The Court **REVERSES and REMANDS** the decision of the ALJ for further proceedings, including a determination of the extent to which the Plaintiff's mental impairments affects his ability to work on a sustained basis in a normal work environment.

IT IS SO ORDERED.


Dated: February 22, 2011                    s/     *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

-12-